UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDIBERTO SANTANA,

                    Plaintiff,

        – against –

CITY OF NEW YORK, COMMISSIONER JOSEPH
PONTE, WARDEN KENNETH STUKES, and
DEPUTY WARDEN ROBERT KELLY,

                    Defendants.

**<u>OPINION AND ORDER</u>**

15 Civ. 6715 (ER)

<u>Ramos, D.J.:</u>

        Ediberto Santana ("Plaintiff"), acting *pro se* and *in forma pauperis*, brings this action

against the City of New York ("City"), Commissioner Joseph Ponte, Warden Kenneth Stukes,

and Deputy Warden Robert Kelly (collectively "Defendants"), pursuant to 42 U.S.C. § 1983.

Plaintiff alleges that the conditions of his confinement at the Otis Bantum Correctional Center

("Bantum") violated his constitutional rights and that he was housed in punitive segregation

without due process.  Defendants bring the instant motion to dismiss the Complaint pursuant to

Federal Rule of Civil Procedure 12(c).  For the reasons set forth below, the Defendants' motion

to dismiss is GRANTED.

# I.    FACTUAL BACKGROUND[1]

Liberally construed, Plaintiff principally alleges that he was subject to unconstitutional conditions of confinement at Bantum's Enhanced Supervision Housing ("ESH") on Rikers Island from April 15, 2015 to December 15, 2015. Plaintiff's Opposition Memorandum to Defendants' Motion to Dismiss ("Opp. Mem.") (Doc. 37), at 4. Specifically, Plaintiff claims that he was placed in ESH where detainees are locked up in continuous cycles of 24 hours in their cells followed by 7 hours outside of their cells. During the 24-hour lock-up period, detainees are not afforded time to shower or an hour for recreation. Plaintiff's Complaint ("Compl.") (Doc. 2) at 3. He alleges that no one ever cleaned his cell even though his cell was searched every week. Opp. Mem. at 6. Plaintiff also claims that detainees were subjected to excessive and unjust beatings and were denied prompt medical attention. Compl. Ex. A. Specifically, he describes an incident during which he was severely beaten by several correction officers and thereafter denied medical attention for the injuries he suffered.[2] Opp. Mem. at 7–8. He further alleges that he ate two out of three meals in his cell and that the food was not served at the prescribed temperature as mandated by the health code. *Id*. at 3. Plaintiff also claims that there were prolonged delays in delivering inmates in ESH to the visiting area, and that they were kept in their cells even when the temperature exceeded 90 degrees. *Id*. Ex. A. Plaintiff claims that these conditions, as well as the fact that detainees housed in ESH are not allowed to have a representative on the Inmate

---

[1] The following facts, accepted as true for purposes of the instant motion, are based on Plaintiff's allegations in his Complaint (Doc. 2), and Plaintiff's Opposition Memorandum to Defendant's Motion to Dismiss ("Opp. Mem.") (Doc. 37). *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *Walker v. Schult*, 717 F.3d 119, 122 n. 1 (2d. Cir. 2013) ("[a] district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

[2] As discussed below, although Plaintiff describes an incident involving force in his opposition, this incident was not included in the Complaint. While he does make reference to "unjust beatings," the Complaint speaks generally of the conditions to which all ESH inmates are subjected (e.g., "We are being treated as inmates who are in Punitive Segregation"). Compl. Ex. A. Nowhere does he say that he himself was beaten, nor does he allege any physical injuries.

Council, demonstrate that detainees in ESH were actually subjected to punitive segregation in violation of the Eight Amendment. *Id*. at 3; Ex. A. Punitive segregation is intended as a response to an offense committed by an inmate while he is incarcerated. *See* 40 R.C.N.Y. § 1-17(a).

As a result of these conditions, Plaintiff states he suffers from "[d]epression, [i]solation, despair, disorientation, hal[l]ucinations, depr[i]vation of senses, hearing, sight, smell" and is "unable to think and put things in perspective [and] seeing ghost[s] at night." Compl. At 3. He also alleges that he did not receive any medical care for these issues while in confinement. *Id*. Plaintiff is seeking $8 million in damages for treatment and care of these afflictions, all of which were allegedly caused by the unconstitutional conditions of his confinement. *Id*. at 5.

Additionally, Plaintiff alleges a violation of his constitutional right to due process stemming from his transfer to ESH on April 15, 2015, without any prior notification or administrative hearing. Opp. Mem. at 3-4. Plaintiff claims that there was no pre-transfer event that could have justified the transfer. *Id*. at 3. Although he concedes that during his pretrial detention he had three previous altercations with other inmates which caused his security classification to increase from 20 to 30, these altercations were remote in time, having taken place between March 2014 and September 2014. *Id*. Plaintiff further alleges that he had no more altercations between September 2014 and the date of his transfer to ESH seven months later, received no more citations, and had his security classification level decreased from 30 to 17 in the seven months preceding his transfer to ESH. *Id*. Plaintiff asserts that the only reason given for his placement in ESH was his criminal history. Compl. at 5.

It was only after being confined in ESH for two weeks that Plaintiff was afforded a hearing to oppose his transfer. Opp. Mem. at 4. At that hearing, Plaintiff claims that he was not

provided any assistance and was not allowed to call any witnesses to testify on his behalf.

Thereafter, Plaintiff alleges that hearings would take place every forty-five days to determine

whether to continue his placement in ESH.  His placement was extended after every subsequent

hearing despite the fact that his only disciplinary citation during this period was for a violation of

the smoking ban.  *Id*. at 5.  Plaintiff alleges that he tried to file a grievance regarding his

placement in ESH by writing directly to Warden Kenneth Stukes, Deputy Warden Robert Kelly,

and the New York City Board of Correction, but was informed that his placement at ESH was

not a grievable issue.  Compl. at 4.

In addition to monetary damages, Plaintiff is seeking injunctive relief ordering the

Department of Corrections to change its practices concerning the operation of ESH, Plaintiff's

removal from ESH, and treatment for Plaintiff's afflictions mentioned above.  *Id*. at 5.

## II.     PROCEDURAL BACKGROUND

Plaintiff filed the instant action on August 24, 2015.  *See* Compl.  The Complaint did not

include an allegation that Plaintiff had been beaten by correction officers.  Defendants filed their

answer on April 22, 2016.  Doc. 15.  Defendants filed an amended answer on August 18, 2016.

Doc. 25.  On April 4, 2017, this Court granted Defendants' order to show cause why this action

should not be dismissed for want of prosecution pursuant to Federal Rule of Civil Procedure

41(b) based on Plaintiff's failure to keep the Court and Defendants apprised of his current

residence.  Doc. 28.  That same day, Plaintiff filed a letter providing his current mailing address

and explaining that while he was incarcerated, the documents pertaining to the case were lost.

Doc. 29.

On June 8, 2017, Defendants filed a motion to dismiss the Complaint pursuant to Rule

12(c).  Doc. 30.  Plaintiff filed an opposition to Defendants' motion on August 14, 2017.  *See*

Opp. Mem.  Defendants' reply memorandum in support of the motion to dismiss was filed on

September 15, 2017.  Doc. 43.

## III.  LEGAL STANDARD

### A.  Rule 12(c) Motion to Dismiss Standard

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay

trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The Court

applies the same standard of review to a Rule 12(c) motion as it does to a motion to dismiss for

failure to state a claim upon which relief can be granted under Rule 12(b)(6).  *Cleveland v.

Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006) (citing *Karedes v. Ackerley Grp. Inc.*, 423

F.3d 107, 113 (2d Cir. 2005)).  On a motion to dismiss pursuant to Rule 12(b)(6), the Court is

required to accept as true all factual allegations in the complaint and to draw all reasonable

inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  However,

the Court is not required to credit legal conclusions, bare assertions or conclusory allegations.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678–81 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007)).  To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain

enough factual matter to state a claim to relief that is plausible on its face.  *Id*. at 678 (citing

*Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  Accordingly, a plaintiff is required

to support his claims with sufficient factual allegations to show "more than a sheer possibility

that a defendant has acted unlawfully."  *Id*.  If the plaintiff has not "nudged [his] claims across

the line from conceivable to plausible, [the] complaint must be dismissed."  *Id*. at 680 (quoting

*Twombly*, 550 U.S. at 570).

**B.** *Pro Se* **Plaintiff**

The same standard applies to motions to dismiss for *pro se* plaintiffs. *See Zapolski v. Fed. Repub. of Germany*, 425 F. App'x 5, 6 (2d Cir. 2011). The Court remains obligated to construe a *pro se* complaint liberally, and to interpret a *pro se* plaintiff's claims as "rais[ing] the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d. Cir. 2006) (citing *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). Nevertheless, "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Triestman*, 470 F.3d at 477 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). To survive a motion to dismiss pursuant to Rule 12(b)(6), a *pro se* plaintiff's pleadings still must contain "more than an unadorned, the defendant-unlawfully-harmed me accusation." *Iqbal*, 566 U.S. at 678. A *pro se* complaint that "tenders naked assertion[s] devoid of further enhancement" will not suffice. *Id.* (internal quotations omitted) (quoting *Twombly*, 550 U.S. at 557).

**C.** **42 U.S.C. § 1983**

Plaintiff seeks to impose liability on the City pursuant to Section 1983. Compl. at 1. Although a municipality cannot be held liable under Section 1983 solely on a theory of respondeat superior, a Section 1983 claim may be brought against a municipality if the alleged unconstitutional action was the result of an official policy, practice, or custom. *Monell v. Dep't of Soc. Servs. of City of N. Y.*, 436 U.S. 658, 690–92 (1978). To state a claim under Section 1983, a plaintiff must allege that: (1) defendants were state actors or were acting under color of

state law at the time of the alleged wrongful action, and (2) the action deprived plaintiff of a right secured by the Constitution or federal law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999). Section 1983 does not create any rights, but merely provides "a procedure for redress for the deprivation of rights [already] established." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (internal citation omitted). Accordingly, a civil rights action brought under Section 1983 will stand only insofar as the plaintiff can prove an actual violation of his rights under the Constitution or federal law. *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)).

## IV. DISCUSSION

Liberally construing the Complaint, Plaintiff alleges that he suffered unconstitutional conditions of confinement and a violation of his due process rights in connection with his placement in ESH. Compl. at 3. In Plaintiff's opposition to Defendants' motion, he alleges new facts that were not included in his Complaint. Opp. Mem. at 2–8. Most notably, he alleges that he was beaten by several correction officers. *Id*. at 7–8. In addition, Plaintiff seeks to add 27 new defendants and raises a number of new causes of action, namely: excessive force, deliberate indifference to a serious medical need, failure to protect, and disability-based discrimination under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act. *Id*. at 1, 7–8, 9, 17–19. Plaintiff, however, has not sought leave to amend his Complaint.

"Ordinarily, plaintiffs may not amend their complaints through their motion papers." *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 402 (S.D.N.Y. 2012); *see also Soules v. Connecticut Dep't of Emergency Servs. and Pub. Prot.*, 882 F.3d 52, 56 (2d Cir. 2018) ("[A] party is not entitled to amend its complaint through statements made in motion papers . . . .") (quoting *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)). Despite this

restriction, "the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations in the plaintiff's complaint." *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 461 (N.D.N.Y. 2009); *see also Aponte v. Buono*, No. 11 Civ. 1077 (CBA) (MDG), 2011 WL 6812924, at *3 (E.D.N.Y. Dec. 28, 2011) ("[T]o the extent [Plaintiff's opposition to Defendant's motion to dismiss] contains new facts relevant to [Plaintiff's] claim against [Defendant], the Court liberally construes the factual allegations in the original . . . complaint as effectively amended by this submission.").

Plaintiff cannot amend his Complaint to add additional causes of actions in his opposition papers. *See Wright*, 152 F.3d at 178 (declining to read in Plaintiff's amended complaint a new cause of action asserted in opposition papers to a motion to dismiss); *see also Mathie v. Goord*, 267 F. App'x 13, 14 (2d Cir. 2008) (holding that claim asserted in a *pro se* plaintiff's opposition papers to a motion to dismiss was not encompassed in the plaintiff's amended complaint); *Williams v. Rosenblatt Sec. Inc.*, 136 F. Supp. 3d 593, 609 (S.D.N.Y. 2015) ("A [*pro se*] plaintiff cannot amend his complaint [by adding new or different claims] in response to a motion to dismiss."); *Bernstein v. City of New York*, No. 06 Civ. 895 (RMB), 2007 WL 1573910, at *10 (S.D.N.Y. May 24, 2007) (holding that "[n]ew claims not specifically asserted in the complaint may not be considered by courts when deciding a motion to dismiss" a *pro se* case) (quoting *Lerner v. Forster*, 240 F. Supp. 2d 233, 241 (E.D.N.Y. 2003)). As such, the Court confines its

analysis to the conditions of confinement and due process claims under the Fourteenth Amendment and municipal liability pursuant to *Monell*.

However, Plaintiff's opposition papers also allege new facts that are consistent with the allegations contained in his Complaint. Since a *pro se* litigant's papers must be read generously, the Court will consider the additional facts contained in Plaintiff's opposition to the extent that they are consistent with the allegations in the Complaint.

### A. Personal Involvement

Plaintiff's papers offer little insight into how the individual Defendants Commissioner Ponte, Deputy Warden Kelly, and Warden Stukes participated in depriving Plaintiff of his constitutional rights. "[V]icarious liability is inapplicable to . . . Section 1983 suits," therefore "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. A prerequisite to a damage award under 42 U.S.C. § 1983 is the "personal involvement of defendants in alleged constitutional deprivations . . . ." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). A defendant holding a supervisory position may be found to have been personally involved in depriving a plaintiff of his or her constitutionally protected liberty interest in several ways:

> The defendant may have directly participated in the infraction . . . . A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong . . . . A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue . . . . Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event[.]

*Id.* at 501 (quoting *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986)). "Supervisory officials may not be held liable merely because they held positions of authority." *O'dell v. Bill*, No. 13 Civ. 1275 (FJS) (TWD), 2015 WL 710544, at *4 (N.D.N.Y. Feb. 18, 2015).

Plaintiff alleges that he was placed in ESH by Warden Stukes and Deputy Warden Kelly, but he does not provide any additional factual allegations to support this conclusion. Opp. Mem., at 4. He also alleges that he wrote to Warden Stukes and Deputy Warden Kelly to complain about his transfer to ESH. Compl. at 4–5; Opp. Mem. at 5. The Second Circuit has held that:

> [a]t the pleading stage, even if [the plaintiff] had no knowledge or information as to what became of his [l]etter [complaining of prison conditions] after he sent it [to the Warden], he would be entitled to have the court draw the reasonable inference—if his . . . complaint contained factual allegations indicating that the [l]etter was sent to the Warden at an appropriate address and by appropriate means— that the Warden in fact received the [l]etter, read it, and thereby became aware of the alleged conditions of which [the plaintiff] complained.

*Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013). Here, Plaintiff does not mention the address where he mailed these letters and also does not allege that they were sent through the appropriate means. Therefore, Plaintiff is not entitled to have the Court draw the inference that Warden Stukes and Deputy Warden Kelly received his letters, read them, and thereby became aware of the alleged conditions of which Plaintiff is complaining. *See Barrow v. Buren*, No. 12 Civ. 1268 (MAD) (CFH), 2015 WL 417084, at *10 (N.D.N.Y. Jan. 30, 2015) (finding that plaintiff's failure to "allege that he sent the letters to the proper addresses by appropriate means or that defendants received the letters and read them" fails to "provide sufficient factual detail to support his claim that the letters establish personal involvement"). Plaintiff also does not mention in his papers what details of his confinement he included in his letters to alert both Warden Stukes and Deputy Warden Kelly of the alleged unconstitutional

conditions in ESH.  He states that the only response he received was that placement in ESH was not a grievable issue and that he was placed there due to his criminal history, but does not specify the method by which he received this information.  *See* Compl. at 5; Opp. Mem. at 5. Moreover, Plaintiff fails to allege any facts as to Commissioner Ponte's alleged involvement in the deprivation of his constitutional rights.  Plaintiff also does not allege in his papers facts that would support a conclusion that any of the Defendants were grossly negligent in managing subordinates who were causing the alleged unlawful conditions.  Consequently, Plaintiff's Complaint must be dismissed for failure to allege any personal involvement by any of the named Defendants.  *See O'dell*, 2015 WL 710544, at *4 (stating that "[i]n order to prevail on a § 1983 cause of action against an individual, a plaintiff must show some tangible connection between the unlawful conduct and the defendant") (internal quotation marks omitted).  Because there is no individual liability, there can also be no municipal liability.  *See Escalera v. Lunn*, 361 F.3d 737, 749 (2d Cir. 2004).  Accordingly, the Complaint must be dismissed in its entirety.

### B.    The Prison Litigation Reform Act

Even if Plaintiff had sufficiently asserted individual liability, the conditions of confinement claim would still be dismissed.  Plaintiff seeks $8 million in compensatory damages for the injuries allegedly sustained while confined in ESH.  Compl. at 5.  According to the Complaint, all of the injuries he sustained while confined in ESH were mental or emotional in nature.  *Id*. at 3 ("Depression, [i]solation, despair, disorientation, hal[l]ucinations, depr[i]vation of senses, hearing, sight, smell, [inability] to think and put things in perspective [and] seeing ghost[s] at night.").  The Prison Litigation Reform Act states that "no Federal civil action may be brought by a prisoner confined in…a correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury…."  42 U.S.C. § 1997e(e).  This

includes "claims alleging constitutional violations." *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002).

Nowhere in the Complaint does Plaintiff allege that he was subjected to excessive force or that he sustained any physical injuries as a result of his confinement in ESH. Because of Plaintiff's failure to allege that he sustained any physical injuries as a result of the conditions of his confinement at ESH, his claim must be dismissed. *Toliver v. City of New York*, 530 F. App'x 90, 93 n.2 (2d Cir. 2013) (stating that "[t]he district court correctly noted that . . . a prisoner may not recover for mental or emotional injury suffered while in custody without a prior showing of physical injury") (internal quotations omitted); *see also Brown v. Cunningham*, No. 15 Civ. 5093 (VB), 2017 WL 627463, at *6 (S.D.N.Y. Feb. 14, 2017) (dismissing "any claims for damages associated with mental or emotional injury" where "plaintiff does not allege physical or sexual abuse"); *see also Dillon v. City of New York*, No. 12 Civ. 7113 (LAP), 2013 WL 6978959, at *2 (S.D.N.Y. Nov. 18, 2013) (dismissing Plaintiff's claims "because he does not meet the PLRA's physical injury requirement and he does not seek nominal or punitive damages"). As indicated below, however, he will be allowed to amend his Complaint to include the excessive force claim.[3]

Moreover, the PLRA does not require dismissal of Plaintiff's due process violation claims. As relevant to his due process claim, "even absent physical injury, [Plaintiff] may still recover compensatory damages for the loss of a constitutional liberty interest." *Holland v. City of New York*, 197 F. Supp. 3d 529, 537 (S.D.N.Y. 2016) (quoting *Rosado v. Herard*, No. 12 Civ. 8943 (PGG) (FM), 2014 WL 1303513, at *13 (S.D.N.Y. Mar. 25, 2014)).

---

[3] Because Plaintiff will be given an opportunity to amend his Complaint, the Court will assess the weight of that claim to provide appropriate guidance.

### C. Conditions of Confinement

Even if the Complaint were not dismissed for failure to allege physical injury or personal involvement of the individual Defendants, it would still be dismissed for failure to state a claim. Plaintiff alleges that he was locked in his cell for 24 hours at a time, deprived of one hour of recreation and time to shower, served food that was lukewarm, and kept in his cell "even when temperatures exceeded ninety degrees." Compl. at 3; Opp. Mem. at 6–7. Although the Constitution does not mandate comfortable prison settings, prisoners are entitled to "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989)). Accordingly, prison officials are required to take "reasonable measure[s] to guarantee the safety of inmates in their custody." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996). While claims of unconstitutional confinement by pretrial detainees are governed by the Fourteenth Amendment's Due Process Clause, "a detainee's rights are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). These claims may be established "by showing that the officers acted with deliberate indifference to the challenged conditions." *Id.* Two prongs must be satisfied: "an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong' . . . showing that the officer acted with at least deliberate indifference to the challenged conditions." *Id.*

### 1. Objective Element

To establish the objective element of an unconstitutional conditions of confinement claim, a plaintiff "must prove that the conditions of his confinement violate contemporary

standards of decency." *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (citing *Helling*, 509 U.S. at 35–36). More specifically, a plaintiff must show that the conditions of confinement, "either alone or in combination, pose an unreasonable risk of serious damage" to a plaintiff's health or safety. *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). "[T]o determine whether a deprivation is sufficiently serious . . . the conditions themselves must be evaluated in light of contemporary standards of decency." *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (internal quotations omitted) (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)). "[C]onditons of confinement may be aggregated to rise to the level of a constitutional violation, but only when they have a mutually reinforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth or exercise." *Walker*, 171 F.3d at 125 (internal quotations omitted) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). Here, none of the conditions Plaintiff was allegedly subjected to rise to the level of a constitutional violation either alone or in combination.

### i.  Exercise

Prisoners must be afforded "some opportunity for exercise." *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985); *see also Gradner v. Murphy*, 613 F. App'x 40, 42 (2d Cir. 2015) (requiring "that prison inmates be allowed some out-of-cell exercise.") (quoting *Williams v. Greifinger*, 97 F.3d 699, 704 n.5 (2d Cir. 1996)). But not every deprivation of the opportunity for exercise violates a plaintiff's constitutional rights. *Williams v. Goord*, 142 F. Supp. 2d 416, 425 (S.D.N.Y. 2001). To satisfy the objective element, "a plaintiff must show that he was denied all meaningful exercise for a substantial period of time." *Id.* To determine if there was a violation, factors to consider are: "(1) the duration of the deprivation; (2) the extent of the deprivation; (3) the availability of other out-of-cell activities; (4) the opportunity for in-cell

exercise; and (5) the justification for the deprivation." *Id.* A deprivation of "all meaningful opportunity [to] exercise" for three-and-a-half years runs "afoul of the Eighth Amendment." *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996).

Here, Plaintiff alleges that he was allowed out of his cell every other day—clearly a stark contrast to the three-and-a-half year deprivation of all opportunity to exercise in *Jolly*. Even assuming that Plaintiff was not afforded any meaningful opportunity to exercise in his cell, Plaintiff fails to allege that he was deprived of the opportunity to exercise while he was outside of his cell during the alternate 7 hour periods. "Courts have held that deprivation of exercise for periods as long as fourteen days do not violate" the inmate's rights. *Dillon v. City of New York*, 12 Civ. 3872 (LAP), 2013 U.S. Dist. LEXIS 101692, at *7 (S.D.N.Y. June 24, 2013). Therefore, even assuming that Plaintiff was not afforded the opportunity to exercise within the 24 hour period he was locked inside of his cell, Plaintiff was not denied all meaningful exercise for a *substantial* period of time.

### ii. Showers

Denial of shower access for up to two weeks has been held not to be a violation of the Eighth Amendment. *Banks v. Argo*, No. 11 Civ. 4222 (LAP), 2012 U.S. Dist. LEXIS 141853, at *10 (S.D.N.Y. Sept. 25, 2012) ("[E]ven assuming prison officials denied Plaintiff shower access for the entire time alleged in his complaint—thirteen days—his claim still fails as a matter of law."); *see also McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003) ("[A] two-week suspension of shower privileges does not suffice as a denial of 'basic hygienic needs.'") (quoting *Cruz v. Jackson*, No. 94 Civ. 2600 (RWS), 1997 U.S. Dist. LEXIS 1093, at * 20 (S.D.N.Y. Feb. 5, 1997)). It is clear that limiting Plaintiff's access to shower and recreation facilities to every

other day does not "violate contemporary standards of decency" or "pose an unreasonable risk of serious damage" to his health or safety.

### iii.    Food Temperature

Plaintiff's allegation that his "food was prepared far too long in advance and always arrived cold" fails to state a violation of his constitutional rights. Opp. Mem. at 7. The Eighth Amendment requires that "prisoners be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it.'" *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980)). Here, Plaintiff does not allege that the food he was provided with was nutritionally deficient. Courts have consistently rejected Eighth Amendment claims based on cold food. *See Huggins v. Schriro*, No. 14 Civ. 6468 (GBD) (JLC), 2015 U.S. Dist. LEXIS 156848, at *18 (S.D.N.Y. Nov. 19, 2015) (holding that allegations of being served cold or lukewarm food did not amount to a constitutional violation); *see also Cruz v. Jackson*, No. 94 Civ. 2600 (RWS), 1997 U.S. Dist. LEXIS 1093, at * 18 (S.D.N.Y. Feb. 5, 1997) ("While warm meals may be preferable to cold, the denial of warm food did not deprive him of the minimal civilized measure of nutrition.") (internal quotations omitted); *Fisher v. Dep't of Corr.*, No. 92 Civ. 6037 (LAP), 1995 U.S. Dist. LEXIS 15206, at *13–14 (S.D.N.Y. Oct. 16, 1995) (holding that food being served cold sixty-five percent of the time did not amount to a constitutional violation).

### iv.    Ambient Temperature

Although Plaintiff further alleges that he was confined in his cell when "temperatures exceeded ninety degrees," he fails to specify the length of his confinement while under these conditions, the adverse effect this type of confinement had on his health, and the number of times

this occurred.  *See* Opp. Mem. at 7.  Plaintiff also claims that another inmate died due to the

excessive heat in his cell, but again does not provide any additional details about this event other

than it took place in a facility other than Bantum.  *Id.*  The Second Circuit has held that

"excessively hot or cold conditions may be a constitutional violation."  *Wingate v. Robert N.*

*Davoren Ctr.*, No. 12 Civ. 5521 (ALC), 2013 WL 4856573, at *3 (S.D.N.Y. Sept. 10, 2013); *see*

*also Hathaway v. U.S. Att'y Gen.*, 491 F. App'x 207, 208 (2d Cir. 2012) (holding that an Eighth

Amendment claim could be established by allegations of imprisonment in a small cell "in which

the temperature exceeded 110 degrees" for a significant amount of time); *Gaston v. Coughlin*,

249 F.3d 156, 164 (2d Cir. 2001) (holding that an Eighth Amendment claim could be established

by proof that an "inmate was subjected for a prolonged period to bitter cold").  But "district

courts in this [Second] Circuit have also found allegations of exposure to extreme temperatures

for short periods of time are insufficient to state an Eighth or Fourteenth Amendment claim."  *Id.*

Without offering any details to substantiate the extent of the alleged confinement in extreme

temperatures, Plaintiff's bare allegations do not sufficiently demonstrate that the conditions he

was exposed to constitute the substantial risk of serious harm necessary to satisfy the objective

element of an Eighth Amendment violation.  *Pack v. Artuz*, 348 F. Supp. 2d 63, 73 (S.D.N.Y.

2004); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

 Because Plaintiff has failed to satisfy the objective component of an Eighth Amendment

claim with respect to each of his grievances, the Court declines to pass judgment on the

subjective component.  *See Martinez v. Schriro*, No. 14 Civ. 3965 (KMW), 2017 WL 87049, at

*5 (S.D.N.Y. Jan. 9, 2017) (dismissing plaintiff's Eighth Amendment claim solely based on the

plaintiff's failure to plead the objective element in his pleadings without analyzing the subjective

element).

### D. Due Process Claim

Plaintiff alleges that he was not afforded due process when he was placed in ESH without prior notification or hearing. Because Plaintiff has failed to adequately claim that the City deprived him of a constitutionally protected interest, his Due Process Claim fails. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property. . . . A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556–58 (1974)). In evaluating a procedural due process claim, the court must determine (1) whether a plaintiff was deprived of a constitutionally protected interest by government action, and, only after finding the deprivation of a protected interest, (2) whether the State's procedures in depriving that interest comported with due process. *See Wilkinson*, 545 U.S. at 221 ("We need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest[.]"); *see also Vogelfang v. Capra*, 889 F. Supp. 2d 489, 510 (S.D.N.Y. 2012) ("In evaluating due process claims, the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution.") (quoting *Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001)). Here, Defendants contend that Plaintiff's constitutionally protected interests were not violated and, alternatively, even if they were, Plaintiff failed to allege that he was denied any of the process afforded by Rules of the City of New York ("R.C.N.Y."), Board of Correction title 40, § 1-16. Reply Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defs.' Reply") (Doc. 43), at 9.

The New York City Board of Correction adopted rules creating Enhanced Supervision Housing and the procedure under which an inmate may be transferred to ESH. *See* 40 R.C.N.Y.

§ 1-16.  The objective of ESH "is to protect the safety and security of inmates and facilities . . .

ESH is designed to separate from the general population those inmates who pose the greatest

threat to the safety and security of staff and other inmates."  *Id*. § 1-16(a).  An inmate is eligible

for ESH only upon a finding that:

> (1) the inmate has been identified as a leader of a gang and has demonstrated active involvement in the organization or perpetration of violent or dangerous gang-related activity; (2) the inmate has demonstrated active involvement as an organizer or perpetrator of a gang-related assault; (3) the inmate has committed a slashing or stabbing, has committed repeated assaults, has seriously injured another inmate, visitor, or employee, or has rioted or actively participated in inmate disturbances while in Department custody or otherwise incarcerated; (4) the inmate has been found in possession of a scalpel or a weapon that poses a level of danger similar to or greater than that of a scalpel while in Department custody or otherwise incarcerated; (5) the inmate has engaged in serious or persistent violence; or (6) the inmate, while in Department custody or otherwise incarcerated, has engaged in repeated activity or behavior of a gravity and degree of danger similar to the acts described in paragraphs (1) through (5) of this subdivision, and such activity or behavior has a direct, identifiable and adverse impact on the safety and security of the facility, such as repeated acts of arson . . . .

*Id.* § 1-16(b)(1)–(6).  The regulation also provides that "to the extent the Department imposes

restrictions on an ESH inmate that deviate from those imposed on inmates in the general

population, such restraints must be limited to those required to address the specific safety and

security threat posed by that individual inmate."  *Id*. § 1-16(d)(1).

Procedurally, once an inmate is determined to be eligible for ESH, that inmate must be

given written notice of that determination within 24 hours of placement in ESH.  *Id.* § 1-16(f)(1).

The notice shall contain, *inter alia*, the grounds relied on to support the inmate's placement in

ESH and information on the inmate's right to review the evidence relied upon by the

Department.  *Id*. § 1-16(f)(1)(i)–(iv).  An inmate has the right to appear in person at the initial

hearing to adjudicate his placement in ESH where the inmate can "submit a written statement,

call witnesses and present evidence." *Id*. § 1-16(f)(iv), (g)(1), (g)(4). The inmate's placement in ESH is also to be periodically reviewed every 45 days "to determine whether an inmate continues to present a significant threat to the safety and security of the facility." *Id*. § 1-16(h)(1).

To determine "[w]hether an inmate has a protected liberty interest in avoiding a particular kind of confinement depends on both 'the duration and conditions of confinement.'" *Hamilton v. Deputy Warden*, No. 15 Civ. 4031 (KBF), 2016 WL 6068196, at *6 (S.D.N.Y. Oct. 13, 2016). An alleged deprivation will not be enough to support a claim for violation of a plaintiff's due process rights "if similar deprivations are typically endured by other prisoners, not as a penalty for misbehavior, but simply as the result of ordinary prison administration." *Welch v. Bartlett*, 196 F.3d 389, 394 (2d Cir. 1999). "The appropriate comparison is between 'the actual conditions of the challenged confinement compared with ordinary prison conditions.'" *Hamilton*, 2016 WL 6068196, at *10 (quoting *Brooks v. DiFasi*, 112 F.3d 46, 49 (2d Cir 1997)). "Especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999). To establish a liberty interest, "a district court should consider the entire 'sustained period of confinement.'" *Fludd v. Fischer*, 568 F. App'x 70, 73 (2d Cir. 2014) (quoting *Giano v. Selsky*, 238 F.3d 223, 226 (2d Cir. 2001)). For a plaintiff confined "for an intermediate duration—between 101 and 305 days—'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Colon v. Howard*, 215 F.3d 227, 232 (2d Cir. 2000)).

Here, Plaintiff alleges that he spent approximately 8 months in ESH (or 243 days). Opp. Mem. at 5. While this amount is clearly a confinement of "intermediate duration," Plaintiff has

failed to allege that similar deprivations are not typically endured by ordinary prisoners. Instead, Plaintiff seeks to compare the conditions in ESH to the conditions in punitive segregation. Punitive segregation addresses offenses committed during an inmate's incarceration. 40 R.C.N.Y. § 1-17(a). Therefore, conditions in punitive segregation do not reflect typical conditions for ordinary prisoners. Other than allegations of 24 hour locked-in periods, Plaintiff has failed to provide additional facts that contrast the conditions of confinement in ESH and ordinary prison conditions. Absent additional facts highlighting the differences in conditions of confinement in ESH and ordinary prison conditions, the Court cannot conclude that placement in ESH creates a protectable state liberty interest.

### E. *Monell* Liability

Although a municipality cannot be held liable under Section 1983 solely on a theory of *respondeat superior*, a Section 1983 claim may be brought against a municipality if the alleged unconstitutional action was the result of an official policy, practice or custom. *Monell*, 436 U.S. at 690–92. The Second Circuit has established a two prong test for Section 1983 claims brought against a municipality. First, the plaintiff must prove "the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving [official]." *Johnson v. City of New York*, No. 06 Civ. 9426 (GBD), 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (quoting *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)). Second, the plaintiff must establish a causal connection between the policy or custom and the alleged deprivation of his constitutional rights. *Id*.

To satisfy the first prong of the municipal liability test, a plaintiff must allege the existence of at least one of the following elements: (1) a formal policy officially endorsed by the

municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation; (3) a practice so consistent and widespread that constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees. *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (internal citations omitted).

While the Court has previously found that Plaintiff has failed to adequately plead a violation of his underlying constitutional rights, even if the Court had found a violation, the Court finds that Plaintiff has failed to meet any of the requisite elements to satisfy the first prong of a municipal liability claim. Plaintiff submits no allegations to indicate the existence of either a formally recognized policy or a consistent and widespread practice adopted by the City. Further, Plaintiff neither alleges that the Bantum prison officials have policymaking authority nor claims that the City failed to train and supervise its employees. Liberally construing the pleadings, Plaintiff seems to allege the existence of a practice adopted by the City solely based on Plaintiff's alleged experience. However, a "single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (quoting *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)). Without offering any factual support for his conclusory allegations, this Court cannot "infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). Therefore, Plaintiff's claims against the City must be dismissed on this basis as well.

### F. Injunctive Relief

Plaintiff seeks injunctive relief in the form of a transfer from ESH. Compl. at 5. But it appears that Plaintiff has been released from Bantum. Doc. 22. Since Plaintiff lacks "a legally cognizable interest in the outcome" of the case for injunctive relief, his claim is rendered moot. *Muhammad v. City of N. Y. Dep't of Corr.*, 126 F.3d 119, 122 (2d Cir. 1997); *see also Khalil v. Laird*, 353 F. App'x 620, 621 (2d Cir. 2009) (holding a Plaintiff's injunctive relief claim moot because when "[Plaintiff] was released from prison [while the action was pending] he no longer had a continuing person stake in the outcome of this action") (internal quotations omitted) (quoting *Muhammad*, 126 F.3d at 122).

### G. Leave to Amend

Defendants request that the Court deny Plaintiff any leave to amend his Complaint. Defs.' Reply at 5. They argue that Plaintiff's request for leave to amend is made in bad faith, would be futile for failure to state a claim, and would be unduly prejudicial to them "due to Plaintiff's inexcusable two-year delay in seeking such leave." *Id.* As a general rule, leave to amend a complaint should be freely granted. *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002). District courts have broad discretion in deciding whether to grant leave to amend. *Pasternack v. Laboratory Corp. of Am.*, 892 F. Supp. 2d 540, 548–49 (S.D.N.Y. 2012). It is advisable that "when addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Thompson*, 284 F.3d at 416 (quoting *Branum v. Clark*, 927 F.2d 689, 705 (2d Cir. 1991)) (internal quotation marks omitted). A court should allow leave to amend a pleading unless the non-moving party can establish prejudice or bad faith. *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir.

2010) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).  Denying leave to amend is proper where the amendment would be futile, would result in undue prejudice to the opposing party, or would be made in bad faith.  *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009).  An amendment is considered futile where the plaintiff is unable to demonstrate that he would be able to cure the defects in a manner that would survive a motion to dismiss.  *Hayden v. County of Nassau*, 180 F.3d 42, 53–54 (2d Cir. 1999).

Defendants emphasize that the fact that Plaintiff is seeking leave to amend two years after filing of this suit but "mere delay . . . , absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend."  *Block*, 988 F.2d at 350 (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)) (internal quotations omitted).  Defendants' conclusory statement that granting Plaintiff leave to amend would be unduly prejudicial for them is not enough to sustain their "burden of establishing that an amendment would be prejudicial."  *Sterling v. Interlake Indus. Inc.*, 154 F.R.D. 579, 589 (E.D.N.Y. 1994).  Neither do Defendants' conclusory statements that Plaintiff's request for leave to amend is made in bad faith and would be futile for failure to state a claim.

Given that this would be Plaintiff's first time in amending and the possibility that this leave would allow Plaintiff to assert additional facts to fully state his claims, the Court cannot conclude that amendment would be futile.  Therefore, Plaintiff's Complaint will be dismissed without prejudice.  The Court directs Plaintiff to submit an amended complaint, if at all, by no later than April 27, 2018.  If Plaintiff wishes to continue to assert claims against the individual Defendants named in the initial Complaint, he must add additional facts that allege personal involvement of the Defendants in depriving him of his rights.  Plaintiff may also seek to add an excessive force claim, and all facts relevant to that claim including, but not limited to, the date

and location of the alleged assault, the individuals involved, the injuries sustained, and the officers of whom Plaintiff requested medical assistance. Plaintiff is instructed to only include additional Defendants that are alleged to have had personal involvement in these new claims.

## V. CONCLUSION

For the reasons set forth above, the City's motion to dismiss Plaintiff's Complaint is GRANTED. Plaintiff must file his Amended Complaint, if at all, by April 27, 2018. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 30, and mail a copy of this Opinion and Order to Plaintiff.

It is SO ORDERED.

Dated: March 29, 2018
      New York, New York

Edgardo Ramos, U.S.D.J.